IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3127-F

| | |
|---|---|
| LARRY R. TART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| KELLY DUFAULT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on: (1) Plaintiff's motion for summary judgment [DE-32]; (2) Plaintiff's "Motion to Amend" [DE-43]; and (3) Defendants' motion to dismiss [DE-34]. For the following reasons, Plaintiff's "Motion to Amend" [DE-43] and motion for summary judgment [DE-32] are DENIED and Defendants' motion to dismiss [DE-34] is ALLOWED.

## I. STATEMENT OF THE CASE

On June 11, 2012, Plaintiff, an inmate in the custody of the State of North Carolina[1] proceeding pro se, filed this action against Defendants alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendants unlawfully opened his legal mail, and retaliated against him for his filing of a separate civil suit. Compl. [DE-1], pp. 3-4. Between July 3, 2012 and August 27, 2012, Plaintiff filed various documents relating to discovery, including a motion to compel. [DE-6, 7, 9]. On October 9, 2012, the court denied Plaintiff's motion to compel and determined that Plaintiff's complaint survived frivolity review pursuant to 28 U.S.C.

---

[1] The actions described in the complaint occurred at Warren Correctional Institution ("Warren"). Compl. [DE-1], p. 2.

§ 1915(e)(2)(B). October 9, 2012, Order [DE-11].

On October 10, 2012, the Clerk of Court entered an order of investigation [DE-12], pursuant to this District's Prisoner Representation Plan, instructing North Carolina Prisoner Legal Services, Inc. ("NCPLS") to investigate Plaintiff's claims. Plaintiff filed a motion requesting the entry of a temporary restraining order ("TRO") [DE-17] on November 13, 2012. NCPLS opined that appointment of counsel was not required in this action on December 27, 2012 [DE-20]. On January 17, 2013, Plaintiff requested that the court reconsider the denial of his motion to compel. Mot. [DE-22]. Plaintiff filed a "motion for a more definite statement" [DE-30] on February 28, 2013 and a "motion to enter evidence" [DE-31] on March 4, 2013. On March 12, 2013, Plaintiff filed the instant motion for summary judgment [DE-32] and a motion for the entry of default [DE-33]. Defendants also filed their motion to dismiss [DE-34] on March 12, 2013, and the court notified [DE-37] Plaintiff about the motion to dismiss, the consequences of failing to respond, and the response deadline. Plaintiff responded to the motion to dismiss on March 26, 2013 [DE-38]. Defendants filed a motion for the entry of a protective order [DE-39] on March 27, 2013. On April 5, 2013, Plaintiff renewed his request for the entry of default [DE-41].

This court entered an order on May 3, 2013 [DE-42] which: (1) granted Defendants' motion for the entry of a protective order; (2) denied Plaintiff's request for a TRO; (3) denied Plaintiff's request to reconsider the denial of his motion to compel; (4) denied Plaintiff's "motion for a more definite statement"; (5) denied Plaintiff's "motion to enter evidence"; and (6) denied both of Plaintiff's requests for the entry of default. Plaintiff filed the instant "Motion to Amend" on May 20, 2013, in which he seeks to "fix [his] request for a [TRO]." Mot. [DE-43], p. 1. On July 11, 2013, Plaintiff filed a notice of interlocutory appeal [DE-44], indicating that he was appealing this

court's May 3, 2013 order to the Fourth Circuit. In summary, Defendants' motion to dismiss [DE-34], Plaintiff's motion for summary judgment [DE-32], and Plaintiff's "Motion to Amend" [DE-43] are now ripe for adjudication.

## II. STATEMENT OF THE FACTS

As noted above, Plaintiff alleges that Defendants unlawfully opened his legal mail, and retaliated against him for his filing of a separate civil suit. First, he asserts that mail related to a grievance he filed was opened outside of his presence. Specifically, Plaintiff contends that on January 9, 2012, Defendants "sent [him] legal . . . mail from . . . [a] step III remedy solution board, out of any envelope." Compl. [DE-1], p. 6. Because this correspondence was not opened in his presence, Plaintiff refused to accept it. Id. Plaintiff was notified by Warren officials that the January 9, 2012 correspondence was not legal mail as defined by the North Carolina Department of Public Safety's ("DPS") mail policy. Pl. Doc. in Supp. [DE-1-1], p. 19.

In addition, Plaintiff alleges that Defendants "opened [and] possibly read [or] photocopied without [his] presence or [his] consent" correspondence he received from United States Congressman Brad Miller. Compl. [DE-1], p. 3. Plaintiff asserts that this letter was opened outside of his presence and not logged as legal mail "in violation of [his guaranteed] constitutional rights." Id. at pp. 6-7. On January 22, 2012, Plaintiff drafted a letter to Warren officials asking why the letter from Congressman Miller was not "placed on a . . . legal mail form." Pl. Doc. in Supp. [DE-1-1], p. 3. He was notified that the correspondence from Congressman Miller was not legal mail as defined by DPS mail policy. Id.

Plaintiff has not provided the court with a copy of the letter from Congressman Miller. However, Plaintiff has attached a letter from Congressman Miller dated January 18, 2012 in which

3

he wrote:

> I received your letter . . . in reference to the problems you are experiencing at . . . Warren . . . . As I've indicated in previous responses to your requests for assistance, federal statutes prevent me from becoming involved in legal matters such as the one you described . . . . Moreover, because . . . Warren . . . is governed by the State of North Carolina, as a member of the U.S. House of Representatives, I have no jurisdictional authority in state matters.

Id. at p. 5. Plaintiff has also attached to his complaint an administrative remedy procedure form dated January 31, 2012. Id. at p. 31. There is no indication that Plaintiff submitted this form to the appropriate prison officials in an attempt to exhaust his administrative remedies. Id. Indeed, Plaintiff describes this document as a "confidential grievance." Id. Regardless, in the January 31, 2012 form, Plaintiff contends that the January 18, 2012 letter was "opened, read and possibly copied out of [his presence]." Id. Therefore, Plaintiff states that he "will not accept the . . . letter" and he "has requested [that] it [be] sent back to [Congressman] Miller." Id.

Finally, Plaintiff argues that Defendants are retaliating against him for the complaint he filed in Tart v. Kornegay, et al., 5:11-CT-3236-BO. Id. at p. 4. Other than the incidents involving his mail described above, Plaintiff does not describe how Defendants are retaliating against him.

### III. DISCUSSION

#### A. Defendants' Motion to Dismiss

Defendants assert that Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When subjected to a Rule 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008) (emphasis in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court in Twombly upheld a Rule

4

12(b)(6) dismissal because the complaint failed to allege facts sufficient to show a claim was plausible rather than merely conceivable. See Monroe v. City of Charlottesville, Va., 579 F.3d 380, 386 (4th Cir.2009), cert. denied, 559 U.S. 992 (2010). Accordingly, while a reviewing court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff," Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009), the court still "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir.2011) (internal quotations and citations omitted). In doing so, "the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe, 579 F.3d at 385–86 (quotation marks and alterations omitted).

Ordinarily, a motion to dismiss pursuant to Rule 12(b)(6) is concerned only with whether the complaint adequately states a claim for relief. It generally "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). However, an affirmative defense, like the failure to exhaust administrative remedies as required by the PLRA, may be raised in a motion to dismiss pursuant to Rule 12(b)(6) where the facts necessary to resolve the applicability of the defense are alleged in the complaint and supporting documents attached thereto. See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Moreover, "[i]n reviewing a Rule 12(b)(6) [motion, the court] may properly take judicial notice of matters of public record . . . [and may also] consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Phillips, 572 F.3d at 180.

5

### 1. Plaintiff's First Amendment Claim

Plaintiff contends that his "First Amendment [guarantees]" were violated when Defendants improperly opened his legal mail.[2] Inmates have a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam). Therefore, "legal mail"[3] generally may not be opened outside of the presence of the prisoner-addressee. Wolff v. McDonnell, 418 U.S. 539, 578 (1974).

However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or that defendants' conduct hindered his efforts to pursue a legal claim or show actual harm by the opening. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–54 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir.2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996) (en banc); American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785–86 (4th Cir.1993). Further, isolated incidents without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir.1983) (occasional accidental opening of legal mail does not state of claim of the denial of one's right to the

---

[2] To the extent Plaintiff claims that Defendants violated applicable DPS policies in the treatment of his mail, a violation of prison regulations, without more, does not give rise to a federal constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Jackson v. Dillman, No. 7:11-CV-140, 2011 WL 1882400, at *3 (W.D.Va. May 17, 2011) ("[T]he mere fact that the handling of [plaintiff's] mail and the resultant delay violated prison policies does not prove that the delay was intentional, and a negligent mail delay does not give rise to any constitutional claim of denial of access.").

[3] The court will assume without deciding that the letters described by Plaintiff are legal mail. Notably, however, DPS regulations would not classify this correspondence as legal mail. DPS Mail Policy § .0308(b), Def. Ex. A [DE-35-1], p. 3. Cf. Patel v. Morin, No. 5:10-CT-3121-FL, 2013 WL 5348437, at * 10 (E.D.N.C. September 23, 2013) (noting, in Bivens case, that to be classified as legal mail, the legal sender must be specifically identified and the mail must be marked confidential).

6

access of court). "[P]rison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir.1998). In order to show actual injury, "a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 1290–91 (citations omitted). Plaintiff specifically describes only two incidents in his complaint, and does not allege that Defendant's opening of his mail impeded any legal proceeding. Accordingly, Plaintiff fails to state a claim for denial of access to the courts.

Plaintiff also fails to assert any viable claims related to his general right to receive personal, non-legal mail. Prisoners have a First Amendment right to send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). However, prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." Thornburgh, 490 U.S. at 408 (citation omitted). In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. See Thornburgh, 490 U.S. at 413. In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly applied policy, open an inmate's incoming mail. See Wolff, 418 U.S. at 574–77; Bumgarner v. Bloodworm, 768 F.2d 297, 301 (8th Cir.1985) (per curiam). Although there may have been incidents of

7

negligence or mistake, it is clear that Defendants were uniformly and evenly applying a policy while handling Plaintiff's mail. Pl. Doc. in Supp. [DE-1-1]; DPS Mail Policy §, Def. Ex. A [DE-35-1]. Therefore, Plaintiff has failed to allege a First Amendment claim. See Corbett v. Branker, No. 5:10-CT-3137-BO, 2012 WL 380453, at * 3-4 (E.D.N.C. February 6, 2012) (summarizing legal standards and holding that a plaintiff failed to state a claim when his allegations focused on a "mix up in delivery of the mail" and any mishandling of his mail "appear[ed] to have been done inadvertently").

In the alternative, Plaintiff's First Amendment claim also fails because he has not exhausted his administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006) (noting that exhaustion under the PLRA is mandatory). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust his administrative remedies even if the specific relief he seeks in his complaint is not available through the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Furthermore, exhaustion is mandatory "even where the inmate claims that exhaustion would be futile." Reynolds v. Doe, 431 F. App'x 221, 222 (4th Cir. 2011) (unpublished ) (citing Booth, 532 U.S. at 741 n.6). Filing suit before exhausting administrative remedies dooms the action. See, e.g., Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004); Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003). "The level of detail necessary in a

8

grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 205.

DPS has a three step administrative remedy procedure which governs the filing of grievances. See, e.g., Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008); Goulette v. Warren, No. 3:06CV235–1–MU, 2006 WL 1582386 (W.D.N.C. June 1, 2006). This administrative remedy procedure ("ARP") first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. DPS ARP § .0301(a), Def. Ex. B [DE-35-2], p. 2. If informal resolution is unsuccessful, the DPS ARP provides that any inmate in DPS custody may submit a written grievance on Form DC–410. Id. at § .0310(a), Def. Ex. B [DE-35-2], p. 6. If the inmate is not satisfied with the decision reached at the step one level of the grievance process, he may request relief from the facility head. Id. at § .0310(b)(1), Def. Ex. B [DE-35-2], p. 7. If the inmate is not satisfied with the decision reached by the facility head, he may appeal his grievance to the Secretary of Correction through the inmate grievance examiner. Id. § .0310(c)(1), Def. Ex. B [DE-35-3], p. 8. The decision by the inmate grievance examiner or a modification by the Secretary of Correction shall constitute the final step of the administrative remedy procedure, Id. § .0310(c)(6), Def. Ex. B [DE-35-2], p. 9.

Although Plaintiff has attached numerous documents to his complaint in an effort to demonstrate exhaustion, ultimately he has not complied with this procedure. For example, Plaintiff has attached several grievances unrelated to the claims raised in the instant complaint. Pl. Doc. in Supp. [DE-1-1], pp. 11, 12, 14, 15, 18, 21, 22, 23, 36, 43, 44, 45. He has also attached copies of letters he wrote directly to Warren officials that were not submitted in connection with a formal

grievance. Id. at pp. 3,13, 27, 30, 42, 46. In addition, Plaintiff has attached personal notes written on grievance forms. Id. at pp. 7,8, 16, 17, 19, 20, 24, 28, 32, 33, 34, 35. These notes contain no indicia that they were submitted pursuant to the ARP. Id. Finally, Plaintiff has attached a self-styled "confidential grievance." Id. at p. 31. Again, it is unclear whether this grievance was submitted, and if so, to whom.[4] Id. In summary, Plaintiff has not complied with the DPS ARP and therefore has not exhausted his claims. See Tart v. Kornegay, No. 5:11-CT-3236-BO, 2013 WL 74734, at * 3 (E.D.N.C. January 4, 2013) (citation omitted) (stating that Plaintiff may not "circumvent the [administrative remedy] process upon his choosing").

For these reasons, the court ALLOWS Defendants' motion to dismiss Plaintiff's First Amendment claim.

### 2. Plaintiff's retaliation claim

Plaintiff also asserts that the improper handling of his mail constitutes retaliation against him for the claims he filed in Tart v. Kornegay, 5:11-CT-3236-BO. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). An inmate must also demonstrate that he suffered some adversity in response to his exercise of protected rights. Daye v. Rubenstein, 417 Fed. App'x. 317, 319 (4 Cir. 2011). Inmate claims of retaliation should be treated with skepticism because "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran, 73 F.3d at 1317 (quotation omitted). Likewise, "'[a] complaint

---

[4] Although the ARP contemplates the possibility of an inmate submitting a confidential grievance, Plaintiff has not complied with the proper procedure for doing so. DPS ARP § .0309(a), Def. Ex. B [DE-35-2], p. 6.

which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" Gill v. Mooney, 824 F.2d 192, 194-95 (2nd Cir.1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2nd Cir.1983)). Here, Plaintiff offers nothing in support of his claim other than conclusory allegations. The fact that Defendants opened Plaintiff's mail outside of his presence on two occasions is insufficient to support a retaliation claim. Corbett, 2012 WL 380453, at * 4 (noting that plaintiff failed to state a claim where "there is simply no evidence before the court that the mail mix up was done as a form of retaliation, but simply inadvertently."). For these reasons, the court ALLOWS Defendants's motion to dismiss Plaintiff's retaliation claim.

## B. Plaintiff's Motion for Summary Judgment

Plaintiff has filed a motion for summary judgment.[5] Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). For the reasons set forth above in connection with Defendants' motion to dismiss, Plaintiff has failed to establish he is entitled to judgment as a matter of law. Therefore, Plaintiff's motion for summary judgment is DENIED.

---

[5] Plaintiff has styled two previous motions as requests for summary judgment [DE-33; DE-41], and both motions were denied. May 3, 2013, Order [DE-42], pp. 4-5.

11

## C. Plaintiff's Motion to Amend

Finally, Plaintiff has filed a "Motion to Amend" [DE-43] in which he "requests the Court[']s permission to fix [his] request a [TRO] that the Court says was filed wrong . . . on [November 8, 2012]." Mot. [DE-43], p. 1. Plaintiff must establish the following to obtain a TRO or a preliminary injunction: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds, _ U.S._, 130 S.Ct. 2371 (2010). On May 3, 2013, this Court denied Plaintiff's request for a TRO because, *inter alia*, Plaintiff had "failed to satisfy, or even address, the common four-part test governing motions to preliminary injunctive relief." May 3, 2013, Order [DE-42], pp. 1-2. Plaintiff has not proffered any argument that would merit reconsideration of the May 3, 2013 Order. On the contrary, Plaintiff's claim has failed on the merits, and therefore his request for a TRO is likewise without merit. Accordingly, Plaintiff's "Motion to Amend" is DENIED.

12

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's "Motion to Amend" [DE-43] and motion for summary judgment [DE-32] are DENIED and Defendants' motion to dismiss [DE-34] is ALLOWED. The Clerk of Court is DIRECTED instructed to close this case.

SO ORDERED. This the 3 day of December, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge